THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS VELARDE, Defendant-Appellant.

Second District No. 84—0657

Opinion filed October 18, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles Schiedel and Robert D. Seeder, both of State Appellate Defender's Office, of Springfield, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Carlos Velarde, was found guilty in a jury trial of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1) and was sentenced to a seven-year term of imprisonment.

Two issues are presented for review: (1) whether the trial court erred in refusing to instruct the jury on the lesser offense of theft; and (2) whether defendant was denied a fair trial where he was twice led into the courtroom by uniformed deputy sheriffs in view of the jury venire.

At trial, Michael Roberts, manager of Columbia Audio Video, Inc., testified that while at work on December 10, 1983, he took his lunch break and exited the store through the front door and went along side the store into the parking lot. At this time, he noticed a station wagon backed up to the warehouse doors of the store located in the rear of the parking lot. The public is not allowed access to the warehouse, and only authorized personnel were permitted access to the building through those doors.

Roberts stated that as he neared the station wagon, he noted that a black male was in the driver's seat, that the engine was running, and that a video recorder was inside the car. As he reached inside the car and momentarily grappled with the occupant, Roberts noticed another male, whom he later identified as defendant, walking out of the warehouse door carrying a video recorder box, later determined to contain a video recorder. Defendant, noticing Roberts, ran toward the station wagon and threw the box on top of it. The station wagon was driven off before defendant could enter the car. The video recorder on top of the car fell to the ground.

Roberts further testified that he apprehended defendant and held him until the police arrived. When Roberts returned to the store, he examined the warehouse doors and found one of the doors bent in the lock area and scratches on the side of that door. He could not state how long these scratches had been there or how they got there. Roberts did testify, however, that the door automatically locked when it closed and, although this door had been left

open on previous occasions, he recalled that when he approached the station wagon the warehouse door was closed. He determined that two video recorders were missing, and the one he observed defendant carrying had been located just inside the warehouse door from which defendant exited.

Rockford police detectives Howard Forrester and Richard Nimmo testified that they interviewed defendant at about 5 p.m. on the day of the incident pursuant to their investigation of the burglary. Defendant told them that he and a black man known to him only as Sam drove defendant's station wagon to Columbia's parking lot. When they arrived, defendant exited the car and went behind a dumpster to relieve himself. Defendant saw Sam turn the car around in the parking lot. Defendant then stated that when he looked up a couple of minutes later, he saw Sam running out of the store carrying two boxes, a clerk chasing Sam, and Sam entering the station wagon and driving off. The store clerk then asked him to go into the store, and he accompanied the clerk.

Defendant testified at trial that he gave a ride to a black man whom he knew as Sam to Columbia to buy a stereo needle. Along the way, they stopped at a hardware store where he purchased an item. They then drove to Columbia and pulled the car into the back of the parking lot. Defendant stated that he exited the car and told Sam he was going to go to the bathroom. Sam then turned the car around.

Defendant recalled that after relieving himself behind some dumpsters, he next noticed Sam walking out of the store with two boxes and a man following him. Sam attempted to enter the station wagon with both boxes, but dropped one while struggling with this man. As Sam began to pull away in the car, defendant hollered at him and began to chase the car. At that time, the man who had been struggling with Sam tackled defendant. Defendant's wife also testified that a man called requesting a ride to buy a stereo needle and defendant picked up the man.

During the instruction conference, defendant, who had been charged only with burglary, tendered an instruction on theft which was refused by the trial judge.

■ Defendant's first contention is that the trial judge erred in refusing to instruct the jury on the offense of theft. His post-trial motion, however, failed to claim as error the court's refusal to give the theft instruction. The State first argues that the failure to include this claim of error in the post-trial motion waives the issue for purposes of appeal. Defendant replies that where, as here, trial

counsel tenders an instruction which sufficiently permits a court to consider the matter, the failure to list that issue in a post-trial motion will not constitute a waiver.

We believe that a waiver occurs where an instruction is tendered by a defendant and refused by the trial court at trial, but is not included as a claim of error in a post-trial motion. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180-81, 415 N.E.2d 1027.) Specific references in post-trial motions to the reasons why a trial judge's actions or rulings were wrong enable him to reconsider their propriety in a less pressured environment. If an egregious error has actually occurred, the judge can order a new trial, thus avoiding the delay and expense of appellate review. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.) Nevertheless, a limited exception to the waiver rule for instructional error is provided under Supreme Court Rule 451(c) (87 Ill. R. 451(c)). This exception is restricted to the correction of grave errors or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248.

Even if we were to conclude that there was not a waiver by the defendant's failure to raise this claim in his post-trial motion, we would still have to determine whether the claimed error was harmless (see *People v. Moore* (1983), 95 Ill. 2d 404, 410, 447 N.E.2d 1327); and, under the facts here, the same result which we hereinafter reach would be obtained.

■ Turning to the facts of this case and whether it was error to refuse defendant's tendered instruction on theft, an uncharged lesser offense, our decision is guided by the recent holding of our supreme court in *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.

In *Dace*, the court declined to adopt the "inherent relationship test" for determining when a defendant is entitled to a lesser offense instruction. (104 Ill. 2d 96, 102, 470 N.E.2d 993.) Although our supreme court has previously held that, in a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, is entitled to an instruction which would permit a finding of guilt of the lesser offense (*People v. Cramer* (1981), 85 Ill. 2d 92, 97-98, 421 N.E.2d 189); theft is not a lesser included offense of burglary. *People v. McCreary* (1984), 123 Ill. App. 3d 880, 884, 463 N.E.2d 455; *People v. Johnson* (1982), 103 Ill. App. 3d 564, 567, 431 N.E.2d 1381; *People v. Heard* (1980), 80 Ill. App. 3d 701, 707-08, 400 N.E.2d 65; see

*People v. Dace* (1984), 104 Ill. 2d 96, 103-04, 470 N.E.2d 993 (Simon, J., dissenting).

However, the court in *Dace* determined that where the charging instrument charged a residential burglary with the specific intent to commit theft and the offense of theft was proved by the evidence, refusal to give a defendant's tendered instruction on theft was error. (104 Ill. 2d 96, 102-03, 470 N.E.2d 993.) Although the instant case was tried before the opinion in *Dace* was rendered and the trial judge understandably was without the benefit of the court's reasoning therein, we are compelled to follow *Dace* and apply its rationale to this case.

The information here charged defendant with burglary with the intent to commit a theft, and the evidence in this record was sufficient to prove a theft. The State's evidence clearly established both the unlawful entry and intent to commit a theft necessary to prove a burglary and the defendant's unauthorized possession of the video recorder with the intent to permanently deprive the owner required to prove a theft. Thus, applying the *Dace* rationale, it was error for the trial court to refuse defendant's tendered instruction on the lesser offense of theft.

Since *Dace*, however, at least one appellate court decision has applied the harmless error doctrine and refused to reverse finding harmless error beyond a reasonable doubt due to the overwhelming weight of defendant's guilt of residential burglary. (*People v. Yager* (1984), 128 Ill. App. 3d 702, 704-05, 471 N.E.2d 244.) In analogous circumstances, our supreme court has held that alleged error in rejecting a defendant's request for a jury instruction on a lesser included offense is not prejudicial where the evidence of the charged offense is so overwhelming that no rational jury could have concluded that the lesser included offense was an appropriate verdict. *People v. Mitchell* (1984), 105 Ill. 2d 1, 14, 473 N.E.2d 1270; see *People v. Moore* (1983), 95 Ill. 2d 404, 410-12, 447 N.E.2d 1327.

As discussed earlier, we are reviewing the alleged instructional error under Rule 451(c) for the correction of "grave errors" or where the case is close factually and fundamental fairness requires that the jury be properly instructed. On the record in the case before us, there was no evidence presented by the State or defendant that raises a factual question which would distinguish the burglary from the theft so that a jury might find the defendant guilty of theft only. The State's sole occurrence witness testified he saw defendant walk out of the warehouse carrying the video recorder. When an apparent accomplice fled by car, defendant ran and was

caught by the witness. Defendant's version is that he was never inside the warehouse, was never in possession of the video recorder, and had just relieved himself behind some dumpsters when he saw his friend Sam with two boxes and struggling with another person.

Unlike the two consolidated cases in *Dace*, where there was not only some evidence supporting burglary but also other evidence tending to show only a theft, the evidence here supported a burglary conviction or a not guilty verdict. Despite defendant's attempts in his appellate brief to theorize arguments which could be made to show a theft rather than the offense of burglary, in our judgment no jury could have concluded on this record that theft was an appropriate verdict rather than burglary. Any error here is not prejudicial to require a retrial.

■■ The second issue defendant raises on appeal is that he was denied a fair trial when he was twice led into the courtroom by two uniformed deputy sheriffs in the view of the jury venire prior to commencement of the *voir dire*. He argues that this custodial escort prejudiced him in the eyes of the jury as a dangerous and untrustworthy individual.

Although this procedure was objected to at trial, it was not preserved in the post-trial motion and is waived. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.) Moreover, the escort of defendant was only a minor security procedure and common courtroom procedure which, on this record, we find did not prejudice the defendant. *People v. Friesland* (1985), 130 Ill. App. 3d 595, 597-98, 474 N.E.2d 865; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 478, 375 N.E.2d 513.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.