THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DEWAYNE TUCKER *et al.*, Defendants-Appellants.

First District (6th Division) Nos. 1—87—1377, 1—87—1388 cons.

Opinion filed July 21, 1989.

Randolph N. Stone, Public Defender, of Chicago (Ellen Fishbein and Hugh Stevens, Assistant Public Defenders, of counsel), for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Christine C. Perille, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendants, DeWayne Tucker and Marvin Ester, were convicted in a jury trial in the circuit court of Cook County for possession of a stolen motor vehicle and burglary. Each defendant was sentenced to a three-year term of incarceration in the Illinois Department of Corrections. Defendants have now appealed their convictions. We affirm.

During the *voir dire* proceedings, immediately prior to the beginning of the defendants' trial, the trial judge made certain remarks to the prospective jurors concerning the burden of proof in the case. The court specifically noted that the State had the burden of proof, that the State was required to prove every material allegation of the charges beyond a reasonable doubt, that the defendants "need not prove anything" at trial, and that the defendants were "cloaked with

the presumption of innocence," which the court said meant that the defendants had a "slight advantage" at the beginning of the case. After the trial judge had made these general remarks, he then asked the jurors individual questions about whether any of them had ever been a victim of a crime. As a result of this inquiry, the judge learned that one of the prospective jurors, Richard Kaltoft, had been the victim of an automobile crime where his car was broken into and certain automobile parts were taken. The judge told Mr. Kaltoft that the facts of the present case were similar to the incident he had experienced and then asked Mr. Kaltoft a number of questions to ascertain if, in spite of this similarity, Mr. Kaltoft could be fair and impartial to the defendants. Mr. Kaltoft answered that he would be fair, and, following the inquiry, Mr. Kaltoft was picked as a juror in the present case. Defense counsel did not object to the remarks of the trial judge or to the selection of Mr. Kaltoft as a juror.

Once the jury was selected, opening statements were then made, and following the opening statements of the parties, the State presented its first witness, Kristen Towner. Ms. Towner testified that, in the morning of July 28, 1986, her sister and brother-in-law, Jane and William Watkins, from Louisiana, arrived at her home at 5436 South Harper in Chicago, Illinois. The Watkins arrived at Towner's home in a green Buick Park Avenue automobile, which had Louisiana license plates. Ms. Towner testified that this was the same car that the Watkins had when she had visited them in Louisiana several months earlier. Ms. Towner also stated that she saw the Watkins' car on July 28, 1986, between five and six o'clock in the evening, and did not observe any damage to the vehicle at that time. She said that she and the Watkins then went out that evening, and, when they returned at approximately 10 o'clock, she again saw the car, still parked in the same spot, and did not notice any damage to the car. The next morning, Ms. Towner testified, the car was gone from that parking spot, and she did not see the car again until a few days later. When she saw the car at that time, she testified that her brother-in-law was again in possession of the automobile, but she noticed that the dashboard of the car was damaged and the "whole drive shaft on the inside of the car had been broken away."

The State next presented the testimony of Eddie Harris, an off-duty police officer. Harris stated that at approximately 11:45 p.m. on July 29, 1986, he was in a building in the 4900 block of South Champlain in Chicago. He said he looked out a window in the direction of a vacant lot below and saw a car pull into the lot. He stated that four black men were in the car and that the two men in the back

seat exited the car and walked away, down an adjacent alley. Harris said he then saw the driver, whom he identified in court as the defendant Tucker, and the front seat passenger, whom he also identified in court as the defendant Ester, exit the car. Just after Tucker got out of the car, however, he suddenly got back in the car, and lay down on the front seat, where Harris saw him tamper with something under the dashboard of the car. Harris then called the police and reported the incident. Harris returned to the window and saw Tucker in what appeared to be a stooped-down position, doing something to one of the wheels of the car, while Ester stood nearby, looking back and forth. Harris called the police a second time, and shortly thereafter, the police arrived on the scene. Harris stated that once the police arrived, Tucker jumped up, ran, and then suddenly stopped and fell to the ground, at which point Harris saw the police take him into custody. At the same time, Ester had run down the alley and two officers had chased after him, Harris said.

Officer Hanserd, one of the officers who responded to Harris' call, testified next for the State. Officer Hanserd stated that he and two other officers, Officers Kampenga and Skayhill, responded to the call. When the officers arrived on the scene, he said, Tucker was crouched near the wheel of the car, about 25 feet from him. Tucker looked towards the officers, jumped up, and then ran towards them, threw his hands up, stopped and said, "[O]kay, you got me." Officer Hanserd said he then arrested Tucker. He also stated that Officers Kampenga and Skayhill had followed Ester, who had run away, and that they returned shortly thereafter with Ester in handcuffs. Officer Hanserd described the vehicle at the scene as a four-door Buick Park Avenue automobile, Louisiana license plate number 2801873. On examination of the automobile, Hanserd discovered that the trunk lock had been knocked out and was lying on the ground, that the dashboard was damaged, that the steering column had been peeled or stripped, allowing the car to be started without a key, that the radio was missing, and that the lug nuts on the tires were loose. After the officers had arrested the defendants, Hanserd said, they took the defendants to the police station.

Next, the State presented Officer Kampenga's testimony. Kampenga testified that when he caught Ester, he searched him and found a "T-bar," which was a tool used to pry off spoked hubcaps. Officer Kampenga said he also noticed the same damage to the car as had Officer Hanserd, but, in addition, he also noticed that the glove compartment lock had been pried open.

Officer Kampenga further stated that after the defendants had

been arrested, he checked with the police dispatcher by radio to determine if the vehicle had been reported stolen and was told that the vehicle had been reported as stolen. He obtained the name and phone number of the individual who had reported it stolen from the dispatcher and, subsequently, called that number and spoke to a person on the telephone, who identified himself to Kampenga as William Watkins. He further testified that a short time later a man, who said he was William Watkins, came down to the police station and showed Officer Kampenga his Louisiana driver's license. This person who identified himself as William Watkins, Kampenga stated, then inspected the car and signed for it, and the car was released to him.

Additionally, in his testimony, Officer Kampenga related that he had spoken to Tucker at the police station and asked him what he had been doing at the scene, and that Tucker had told him that he was there only to steal the tires from the car. Officer Kampenga further testified that a jack was found at the scene on the ground near the front of the car when the defendants were arrested.

At the conclusion of this evidence, the State rested its case. The defense did not present any evidence and, thereafter, the jury found both defendants guilty on the charges of possession of a stolen motor vehicle and burglary. As stated earlier, the trial judge sentenced each defendant to a term of three years' incarceration in the Illinois Department of Corrections.

Defendants raise seven issues on review: (1) whether the remarks of the trial judge during *voir dire* deprived the defendants of a fair trial; (2) whether the State improperly relied on inadmissible hearsay evidence to establish the ownership of the vehicle for the crime of burglary and to establish that the vehicle was stolen for the purpose of the crime of possession of a stolen motor vehicle; (3) whether the evidence established that the defendants were guilty of burglary beyond a reasonable doubt; (4) whether the evidence demonstrated that the defendant Ester was guilty of possession of a stolen motor vehicle beyond a reasonable doubt; (5) whether the statute proscribing possession of a stolen motor vehicle (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)) is unconstitutional; (6) whether the trial court erred when it refused to tender defendant's instruction on the offense of criminal trespass to property; and (7) whether the trial court erred when it gave only one set of jury instructions for both defendants.

The defendants argue that the trial court committed reversible error when it "undercut" the State's burden of proof in the case through its comments during *voir dire* that the defendant begins the case with a slight advantage. The defendants assert that the trial

court further erred during *voir dire* when, in response to the prospective juror's statements that he had been the victim of a burglary involving a theft of auto parts and vandalism, the court said that the facts of this case were similar when, in fact, the defendants claim, the facts were dissimilar.

Conversely, the State argues that these matters were waived by the defendants because they did not object to the remarks at trial and did not raise them in a post-trial motion. Moreover, the State argues, even if there were no waiver, the statements when viewed in the context of all of the trial judge's remarks were proper. The State asserts that the trial court's statements regarding the burden of proof were proper and that, in any event, the instructions at the close of trial accurately set forth the burden of proof. In addition, the State contends, the facts of this case were actually similar to the particular juror's own criminal experience, but, even if these remarks were somehow erroneous, the State claims that any such error was harmless, since the defendants did not, and cannot, show any prejudice from these remarks.

■ In *People v. Zehr*, our supreme court ruled that it is essential for jurors in a criminal case to know that a defendant is presumed innocent until proven guilty, that the defendant is not required to present evidence in his own behalf, and that he must be proved guilty beyond a reasonable doubt. (*People v. Zehr* (1984), 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062, 1064.) It is accordingly proper for a trial judge to cover this subject matter in *voir dire*, and there is no set procedure that trial judges must follow in doing so. (See *People v. Emerson* (1987), 122 Ill. 2d 411, 426-27, 522 N.E.2d 1109, 1114; *Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062.) Additionally, to preserve an issue alleging error in such a procedure for review, a party must raise an objection at trial and must also specify the objection in a written post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 187-88, 522 N.E.2d 1124, 1129-30.

■ We find the State's contention persuasive. Defense counsel made no objection to any of these remarks during *voir dire*, nor was there any mention of this matter in the defendants' post-trial motion. Hence, the defendants did waive this issue for purposes of review here. Nevertheless, if defendants had not waived this issue, no reversible error occurred because the defendants have made no showing of any resulting prejudice from the remarks of the court. Even though we find some of the trial judge's remarks improper, in particular, the court's comment that the defendants had a "slight advantage," we find this error to be harmless, inasmuch as the defendants

have not suggested or demonstrated how they were prejudiced by this remark, other than the bald claim that they were. In fact, it actually appears that if the statements concerning the burden of proof had any effect at all, they were of benefit to defendants' position. Also, the court's statements to the prospective juror concerning the juror's experience regarding a similar crime were not erroneous, for we find that the juror's experience and the instant case were factually similar. In any event, the trial judge here asked the juror a number of specific questions about whether he could be fair and impartial, and the juror responded that he could, and the defendants made no objection to this procedure. Thus, we conclude that, under these circumstances, none of the court's remarks here amounted to reversible error.

The defendants next raise, as their second issue, the contention that the State failed to prove ownership, which, they assert, is an element of the crime of burglary and, also, that the State failed to prove that the vehicle was stolen, which is an element of the crime of possession of a stolen motor vehicle. The only evidence to support either of these requirements, the defendants assert, was the inadmissible hearsay testimony of Officer Kampenga. The defendants argue that the officer improperly testified that he requested that the police computer check the status of the vehicle at the scene, that the dispatcher responded that the vehicle had been stolen, and that the dispatcher gave him the phone number of the person who had reported the car as stolen. They also assert that the court further erred when it allowed the officer to also state that he had contacted the person identified as the owner of the vehicle, and that person had come into the station, where he had identified himself to Kampenga as William Watkins, had shown him a Louisiana driver's license, and had signed for the return of the car.

The issue of the admissibility of this evidence, the State argues, was waived because, although the defendants' post-trial motion stated that the ownership element was not properly proven, there was no mention of the admission of hearsay evidence as the basis for this contention. Alternatively, the State asserts, if waiver did not occur, the remainder of the evidence, even without this alleged hearsay, established Watkins' ownership of the vehicle and that the vehicle had been stolen from him. Finally, the State contends that any error in this regard was again harmless error.

██ "A person commits burglary when without authority he knowingly enters or without authority remains within a *** motor vehicle *** with intent to commit therein a felony or theft." (Ill.

Rev. Stat. 1987, ch. 38, par. 19—1.) In the trial of a defendant charged with burglary, the State need not prove specific ownership of the property; ownership is no longer a required element of the crime of burglary. (*People v. Rothermel* (1982), 88 Ill. 2d 541, 544-47, 431 N.E.2d 378, 380-81.) Rather, the State need only establish that someone other than the defendant possessed or held an interest in the property. (*Rothermel*, 88 Ill. 2d at 546, 431 N.E.2d at 380-81.) The proof necessary to show that someone other than the defendant possessed the property is sufficient if it allows the defendant to prepare his defense, protects the defendant from a second prosecution for the same offense, and establishes that someone other than the defendant has a superior interest in the property. See *Rothermel*, 88 Ill. 2d at 546, 431 N.E.2d at 380-81.

■ Similarly, a person commits the crime of possession of a stolen motor vehicle when that person, who is not entitled to the possession of a vehicle, receives or possesses that vehicle "knowing it to have been stolen or converted." (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103.) Thus, the crimes of burglary and possession of a stolen motor vehicle both require only a showing that someone other than the defendant had a superior interest in the property. This essential requirement may be proven by circumstantial evidence and the reasonable inferences therefrom. See *People v. Span* (1987), 156 Ill. App. 3d 1046, 1050-52, 509 N.E.2d 1057, 1059-60; see also *People v. Harris* (1987), 162 Ill. App. 3d 618, 622, 515 N.E.2d 1272, 1274.

■ Initially, we agree with the defendants and find that a portion of Officer Kampenga's testimony was improper hearsay evidence, *viz.*, that portion concerning the dispatcher's response to Officer Kampenga's request, which, Kampenga said, gave him the name and phone number of the person who had reported the car stolen, *i.e.*, the "owner." (See *People v. White* (1985), 134 Ill. App. 3d 262, 282, 479 N.E.2d 1121, 1134; *People v. Hope* (1979), 69 Ill. App. 3d 375, 380, 387 N.E.2d 795, 799.) Nonetheless, we also find that when the evidence here is viewed in its entirety, even without the benefit of this improper testimony, there was sufficient evidence presented to establish and prove that someone other than the defendants, namely, William Watkins, had a superior possessory interest in the vehicle.

The properly presented evidence, which included Ms. Towner's testimony and Officer Kampenga's properly admitted testimony, established the make, model and color of the vehicle, that the vehicle had Louisiana license plates, that a certain individual, Watkins, had possession of that previously undamaged car the day before the ar-

rest, that Watkins came to the station after the arrest, showed Officer Kampenga his Louisiana driver's license, inspected the car, signed for it, and obtained the release of the car from the police. The car was then seen in Watkins' possession immediately thereafter, in a damaged condition. This evidence was, we find, clearly sufficient to support defendants' conviction for burglary and possession of a stolen motor vehicle. Furthermore, the properly presented evidence was strong enough that no reasonable argument can be made that if the improper evidence had not been admitted, the defendants would have been acquitted. (See *People v. White* (1985), 134 Ill. App. 3d 262, 283, 479 N.E.2d 1121, 1135.) Thus, we conclude that no reversible error occurred.

The defendants next argue that the evidence was still insufficient to establish guilt on the burglary charge because there was no evidence, either direct or circumstantial, represented at trial to show that the defendants had formed an intent to commit a theft at the time of the unauthorized entry of the vehicle. The defendants contend that there was no evidence concerning how or why they entered the car, and that none of the reportedly missing items were found on the defendants or at the scene. In addition, defendants claim, Ester's mere presence and flight from the scene were not enough to prove his guilt beyond a reasonable doubt.

The State, however, argues that the evidence here was sufficient to convict both defendants. The direct and circumstantial evidence, as well as the inferences from that evidence, the State asserts, properly supported the jury's verdict.

■■ ■ As we noted earlier, a defendant may be convicted of burglary when the evidence shows that he knowingly and without authority enters a motor vehicle with the intent to steal the vehicle, and this may be proven by circumstantial evidence and the inferences that may be drawn from that evidence. (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103; *People v. Steppan* (1985), 105 Ill. 2d 310, 317, 473 N.E.2d 1300, 1304; *People v. O'Malley* (1986), 143 Ill. App. 3d 474, 477, 493 N.E.2d 82, 84; *In re Stokes* (1982), 108 Ill. App. 3d 637, 641, 439 N.E.2d 514, 517.) Once such evidence has been presented, it is for the jury to weigh the evidence, judge the credibility of the evidence, and determine the facts. (*People v. Adams* (1984), 129 Ill. App. 3d 202, 205, 472 N.E.2d 135, 138.) Additionally, the jury's verdict will not be overturned on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt. *People v. Adams* (1984), 129 Ill. App. 3d 202, 206, 472 N.E.2d 135, 138.

■ Here, we agree with the State that there was sufficient evidence, both direct and circumstantial, to convict both defendants of burglary. The State's witness, Eddie Harris, an off-duty police officer, testified that both defendants drove up in the car and parked it in a vacant lot, that two other male passengers got out of the car, and that, thereafter, both defendants got out themselves. Harris said that immediately thereafter he saw Tucker get back in, lie down on the seat, and tamper with something under the dashboard. Tucker than got out of the car again, stooped down by the tire of the car and tampered with it, while Ester kept a lookout. As soon as the defendants saw the police, the testimony at trial established that they fled. Ester ran away from the police, but Tucker ran towards them, and as the officers who arrived at the scene testified, Tucker stopped suddenly and said, "[O]kay, you got me." Ester, when caught, had in his possession a tool commonly used for prying off spoked wheels. Finally, when the police examined the car which Tucker and Ester had driven to the area, they discovered that the vehicle's steering column was peeled, the dashboard was damaged, the radio was missing, the glove compartment lock was damaged, and the trunk lock was popped out and on the ground. We find this evidence more than sufficient for the jury to have found the defendants guilty of the crimes charged beyond a reasonable doubt.

Nonetheless, the defendant Ester further contends that there was no direct proof presented at trial that he was in possession of the stolen car or that he knew it was stolen. Specifically, Ester asserts that there was no direct evidence that he had control of the car, drove it, or was observed stripping it. Hence, he claims, a reasonable conclusion here could have been that he had merely entered the car with the consent of Tucker, not knowing that it was stolen, and, consequently, he argues, his conviction should be overturned.

On the other hand, the State asserts that the evidence was more than sufficient to convict Ester, and that the use of circumstantial evidence was entirely proper. The State notes that the jury was to weigh the credibility of the evidence, and that the evidence here showed that Ester was a front seat passenger in the car with Tucker, that he acted as a lookout, that he took off when the police arrived, and, finally, that he had a tool for removing spoked wheels when he was caught. Also, the State observes, Ester was in joint possession of the stolen vehicle with Tucker at the time of his arrest.

■ As stated earlier, for the State to prove guilt on a charge of possession of a stolen motor vehicle, the State must only prove, beyond a reasonable doubt, that the defendant was in possession of a

motor vehicle, that the vehicle was stolen, and that the defendant knew the vehicle was stolen. These facts, however, all may be shown by circumstantial evidence, or inferred from the surrounding facts and circumstances. See *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477, 488 N.E.2d 1374, 1377; see also Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1).

■■ A defendant who is a passenger in a stolen motor vehicle may be found guilty of possession of a stolen motor vehicle, where the circumstantial evidence shows that a reasonable person would have believed that the vehicle was stolen. (See *People v. Span* (1987), 156 Ill. App. 3d 1046, 1050, 509 N.E.2d 1057, 1059.) Furthermore, evidence of flight may be considered to infer the defendant's knowledge that the vehicle was stolen. (See *Span*, 156 Ill. App. 3d at 1050, 509 N.E.2d at 1060.) In addition, as we have stated above, a reviewing court will not overturn a jury verdict unless the evidence is so improbable as to create a reasonable doubt as to defendant's guilt. *Span*, 156 Ill. App. 3d at 1050, 509 N.E.2d at 1060.

■■ Here, the evidence presented showed that Ester was guilty of possession of a stolen motor vehicle beyond a reasonable doubt. Ester was a passenger here in the Buick Park Avenue automobile with Louisiana license plates. The glove compartment lock of the vehicle here was damaged and had been pried open, the trunk lock was popped and on the ground, and the steering column had been peeled away. Ester, moreover, stood by the car and kept a lookout while Tucker tampered under the dashboard, and also stood lookout while Tucker tampered with the tire of the car, apparently, as Tucker later told police, as he tried to steal it. Ester stood watch the entire time until he saw the police, at which point he then fled from the scene. (See *Span*, 156 Ill. App. 3d at 1050, 509 N.E.2d at 1059-60.) Furthermore, when Ester was apprehended, he had a tool in his possession that is commonly used to remove spoked wheels from automobiles. All of these facts and circumstances, we believe, were sufficient for the jury to find the defendant Ester guilty of the offense of possession of a stolen motor vehicle beyond a reasonable doubt.

■■ Next, the defendants claim that section 4—103(b) of the Illinois Vehicle Code is unconstitutional (see Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(b)), relying upon the first district opinion in *People v. Bryant* (1988), 165 Ill. App. 3d 996, 520 N.E.2d 890. However, after oral arguments were heard in this case, this decision was reversed. (*People v. Bryant* (1989), 128 Ill. 2d 448; see Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(b).) The Illinois Supreme Court reversed

the appellate court's decision in *Bryant*, specifically holding that section 4—103(b) is constitutional. (*Bryant* (1989), 128 Ill. 2d 448; see Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(b).) We are bound to follow that ruling, and, thus, we will not consider defendants' argument further. See *Clark Oil & Refining Corp. v. Johnson* (1987), 154 Ill. App. 3d 773, 506 N.E.2d 1362.

The defendants next argue that they were entitled to an instruction on a lesser offense of criminal trespass to property because such an instruction would have allowed the jury to find the defendants guilty of the lesser offense of criminal trespass and permitted them to acquit the defendants of the more serious offense of burglary.

The State asserts, again, that this issue was waived because there is nothing in the record to show that such an instruction was ever properly tendered by the defendants, or that there was any objection when the trial judge refused to include such an instruction. Nevertheless, even if there was no waiver, the State still contends that there was no error, because if there was error, any such error was harmless, inasmuch as the evidence here was clearly sufficient to convict the defendants on the burglary charge, and the jury could not, in any event, have acquitted the defendants on that charge.

 Generally, a defendant is entitled to an instruction on an offense of a less serious nature than the one with which he is charged, if the elements of the crime charged can constitute the lesser crime. (*People v. Velarde* (1985), 137 Ill. App. 3d 492, 484 N.E.2d 939.) However, if the evidence is so overwhelming that no rational jury could conclude that the lesser offense was proper, then refusal to give the instruction on the less serious offense is not tantamount to reversible error. (*People v. Fonville* (1987), 158 Ill. App. 3d 676, 511 N.E.2d 1255; *People v. Velarde* (1985), 137 Ill. App. 3d 492, 484 N.E.2d 939; see also *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.) Failure to object to a jury instruction ruling at the jury conference constitutes waiver. *People v. Travis* (1988), 170 Ill. App. 3d 873, 889, 525 N.E.2d 1137, 1146.

 The record here supports the State's assertion that this issue was waived since there is nothing in the record to show that the defense tendered an instruction to the court or that the defense objected to the court's refusal to give such an instruction. The only mention that any instruction was even presented, other than in defendants' post-trial motion, is in a brief oral reference to such an instruction by the trial judge after the agreed-upon instructions had been given to the jury, in which the judge merely noted that an instruction had been requested by the defense and denied by the court

during the instruction conference. (The instruction conference was not reported in the record.) Even if this issue was not waived, reversible error did not occur, because we agree with the State's argument and find that the evidence was more than sufficient for the jury to find the defendants guilty on the burglary charge and that there was no evidence for a rational jury to find defendants guilty of the lesser offense.

 The defendants' final claim is that the trial court erred when it gave one set of instructions for both defendants, because, the defendants claim, the procedure was misleading and confusing. The State again argues that this issue was also waived, and, if it was not waived, any error that did occur was cured by the clear wording of the instructions themselves, the trial judge's clear admonitions to the jury that each defendant was to be considered separately, and the use of separate verdict forms for each defendant.

We find, as the State claims, that this issue was waived. (See *Enoch*, 122 Ill. 2d at 187-88, 522 N.E.2d at 1129-30.) The record does not indicate any objection by defense counsel to this procedure either at trial or in the post-trial motion. But, even if there had not been a waiver, any error here would have been cured by the trial judge's careful admonitions to the jury that each defendant was to be considered separately, and by the use of separate verdict forms for each defendant, Hence, we do not find, under these circumstances, that the trial court committed any reversible error by its use of a procedure where one set of instructions was given for both defendants.

Accordingly, for all of the reasons set forth above, the judgment of the circuit court is affirmed.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.