THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GERALD GORDON, Defendant-Appellant.

First District (1st Division)   No. 1—87—1336

Opinion filed September 24, 1990.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Peter T. Petrakis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Gerald Gordon was charged, along with his friend, Chris Jackson, by indictment with the possession of a stolen motor vehicle. (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103.) Gordon was tried by a jury while Jackson selected a bench trial. The trials were heard simultaneously. The jury returned a verdict of guilty against Gordon, but the court found Jackson not guilty. Gordon appeals from the conviction, contending that: (1) the acquittal of Jackson raises a reasonable doubt as to his guilt; (2) he was not proven guilty beyond a reasonable doubt; (3) Christopher Jackson's testimony is newly discovered evidence, entitling him to a new trial; (4) the court erred when it granted the State's motion *in limine* which significantly impaired defendant's defense; (5) he was deprived of his constitutional right to due process and proportionate penalties; (6) the prosecutor's improper closing argument constituted reversible error; and (7) he was denied his constitutional right to the effective assistance of counsel.

During the trial the testimony of the witnesses established the following facts. Edmund Nickerson, the owner of the vehicle, testified that while he was very close to Chris Jackson and had often given the keys to Jackson allowing him to drive the car, on the particular date and time, he did not authorize the use of his car by Jackson or anyone else. He testified that he parked the car at 2 a.m. in front of his home, and at approximately 9 a.m., after being informed by his mother that the car was gone, he called the police and reported it stolen. Nickerson stated that had he known it was Jackson who had taken the car he would not have reported it stolen. He would, however, have reported it stolen if he had known that Gordon was in possession of the car. Upon recovering his car, Nickerson discovered that the new radio had been replaced with the original factory model radio. He stated that he did not grant Jackson permission to use his car on March 26, 1986, nor had he sold his car to Jackson.

Police officer Wayne Conley testified that on March 26, 1986, he

observed a vehicle parked in a grocery/liquor store parking lot. He noticed that the car had no front license plate. Upon running a computer check of the rear license plate number, he discovered that a car bearing that number had been stolen on March 21, 1986. He approached the vehicle in which Gordon sat at the driver's seat, Jackson was in the front passenger seat and a third individual was in the rear of the vehicle. Officer Conley and his partner required all three men to alight from the car. They were all arrested, handcuffed and given *Miranda* warnings, and questioned. Officer Conley testified that Gordon told him he had been hired to install a radio, that he was driving the car to test the radio, but he was not sure who the owner was. Officer Conley observed that the radio was not attached to the dashboard. At this juncture in the trial, the jury was excused, at which time Officer Conley testified that Jackson stated that he had stolen the car a week earlier.

At the conclusion of Officer Conley's testimony, the State moved *in limine* to bar any reference by defense witnesses to statements made by Jackson on the basis that such statements would be hearsay. Jackson invoked his fifth amendment right to remain silent and declined to testify. The court granted the State's motion *in limine*, barring any reference to Jackson's previous statements.

The following facts were elicited in Gordon's case in chief. Kimberly Butler and Calvin Ward testified that they had previously seen Jackson drive the vehicle in question, and Alice Perkins testified that Gordon had previously worked on her car. Gordon was advised by both defense counsel and the court that if he testified, his prior conviction for possession of a stolen motor vehicle could be used to impeach his testimony. Contrary to the advice and admonitions he received, Gordon chose to testify. He stated that on March 26, 1986, he, Jackson and a third individual went for a test ride in a 1978 Oldsmobile Cutlass which he had in the past seen Jackson drive and also in which he had previously ridden with Jackson. He further testified that on March 26, 1986, while riding in the car, Jackson asked him to fix the radio. After arriving at the store, two policemen approached them, placed them under arrest and questioned them. Gordon admitted to them that he was driving the car, but that it was owned by Jackson. He was advised at that time that the car had been reported stolen.

We turn our attention to Gordon's claim that the State's evidence failed to prove the essential elements of the offense beyond a reasonable doubt. While we agree with Gordon's claim, we do not reach our conclusion on the basis that because the evidence against Jackson was

at least as strong as that on which Gordon was convicted, there exists a reasonable doubt as to his guilt; instead, we reverse Gordon's conviction on the ground that the evidence presented against him is insufficient of proof and so improbable as to raise a reasonable doubt of guilt. See *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.

■■ The fourteenth amendment of our United States Constitution mandates that a conviction be based upon proof beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 361, 25 L. Ed. 2d 368, 373, 90 S. Ct. 1068, 1071.

"After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be *** to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

■■ ■ In Illinois, the right of defendants to conviction only upon proof beyond a reasonable doubt (see *People v. Perroni* (1958), 14 Ill. 2d 581, 153 N.E.2d 578) is well settled, and where the State's evidence is improbable, unconvincing and contrary to human experience, judgments of conviction should be reversed. (See *People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) Moreover, the burden is always upon the State to prove the defendant's guilt beyond a reasonable doubt (see *People v. Daw-*

*son* (1961), 22 Ill. 2d 260, 174 N.E.2d 817), and to prove each and every element of the crime (see *People v. Benson* (1956), 9 Ill. 2d 169, 137 N.E.2d 256), as it is a fundamental principle of our system of criminal jurisprudence that the law presumes the innocence of an accused until he is proved guilty beyond a reasonable doubt of the crime charged. *People v. Magnafichi* (1956), 9 Ill. 2d 169, 137 N.E.2d 256; see also *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.

■■ ■ Gordon was convicted of violating section 4—103(a)(1) of the Illinois Vehicle Code (Code), which makes it unlawful for "[a] person not entitled to the possession of a vehicle or part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, *knowing* it to have been stolen or converted." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1).) Gordon urges that the evidence failed to prove that he had knowledge that the car was stolen; rather, the evidence shows that Jackson gave him permission to drive the car for the purpose of installing a radio. The State argues that knowledge can be inferred on Gordon's part simply because he exercised control over a vehicle which had been recently reported stolen, citing to that part of section 4—103(a)(1) of the Code which states:

"It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle *** has knowledge that such vehicle *** is stolen ***." Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1).

■■ In the case of *In re T.A.B.* (1989), 181 Ill. App. 3d 581, 537 N.E.2d 419, where the respondent was charged with violating section 4—103(a)(1), this court held that the State had the burden to prove knowledge on defendant's part that the vehicle was stolen. (*In re T.A.B.*, 181 Ill. App. 3d at 586.) "Stolen property is statutorily defined as 'property over which control has been obtained by theft.' [Citation.] *** [T]he State [is] obliged to prove that defendant knowingly exerted control over the car in such a manner as to permanently deprive the owner of *its* use, or, in effect, prove that defendant committed theft [citation]." (Emphasis added.) (*In re T.A.B.*, 181 Ill. App. 3d at 586, citing *People v. Bivens* (1987), 156 Ill. App. 3d 222, 230, 509 N.E.2d 640.) In *In re T.A.B.*, the court there found that the State failed to prove respondent committed a theft where the evidence merely revealed that he took his foster father's car without permission and drove it around for awhile in a joyriding escapade.

■■ In the case at bar, the State failed to prove that Gordon committed a theft. The testimony established that Jackson gave Gordon permission to drive the car, in broad daylight, in a public area where the car was known and the keys were in the ignition. Moreover, the

evidence revealed that Jackson asked Gordon to repair the radio and when the police approached the individuals in the car they made no attempt to flee. The evidence established that Nickerson, one of the owners of the vehicle, often gave Jackson permission to drive the vehicle and would not have reported it stolen if he had known Jackson was in possession of the car. The evidence also revealed that Gordon worked on cars and had ridden in Nickerson's car with Jackson on at least one previous occasion. There were no signs of unauthorized entry into the vehicle.

While the State presented testimony from Nickerson that he had not given anyone permission to drive his car on that date and testimony from Officer Conley that he discovered Gordon in the driver's seat of the car, such evidence alone does not prove or infer knowledge on Gordon's part that the vehicle was stolen. To the contrary, based upon our review of the record evidence in the light most favorable to the prosecution, we conclude that the State failed to prove beyond a reasonable doubt each of the essential elements of the crime in general, and in particular, we find that the evidence was so unsatisfactory as to leave a reasonable doubt whether Gordon was in possession of the car *knowing* it to be stolen. We concede that Gordon's own testimony may have substantially damaged his case before the trier of fact; however, we are mindful that the burden remains upon the State to prove the crime against the defendant, and a conviction may not stand based upon weaknesses in the defendant's case. See *People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96.

Accordingly, we reverse Gordon's conviction. Because of our disposition of this case, we deem it unnecessary to consider the remaining questions raised by Gordon on appeal.

Reversed.

CAMPBELL and O'CONNOR, JJ., concur.